UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CRIMINAL ACTION NO. 12-57-JBC**

**UNITED STATES OF AMERICA,**                                                 **PLAINTIFF,**

**V.**              **MEMORANDUM ORDER AND OPINION**

**CHARLES ARTHUR KINISON, JR.,**                             **DEFENDANT.**

\* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of Charles Kinison, Jr., to suppress (R. 20). Because the search of Kinison's home was executed in violation of Kinison's Fourth Amendment rights, and because that violation results from culpable police conduct, the purpose of the exclusionary rule will be served by the court granting the motion

The following facts are derived from the affidavit submitted in support of the petition for the search warrant of Kinison's home and vehicle submitted to the Fayette County District Court on September 1, 2011. On August 9, 2011, Lauren Omstott went to the Lexington-Fayette Urban County Division of Police and spoke to Detective David Flannery. She asserted that her boyfriend, Kinison, was engaged in criminal sexual activity and that she had received numerous text messages from Kinison regarding that activity.

Flannery contacted Special Agent Kimberly Kidd of the Federal Bureau of Investigation, and Kidd interviewed Omstott on August 11. Omstott told Kidd that

Kinison was texting her from a certain phone number, and that the text messages detailed Kinison's contact with a neighbor who represented a group from Savannah, Georgia, who had adopted several children with whom they were engaging in sexual activity.

On August 12, Omstott met with Detective Jim Barber of the Lexington Police's Computer Forensics Unit, and consented for Barber to search her phone. Barber downloaded 1,646 "pages" of text messages from Omstott's phone. Flannery and Kidd reviewed the text messages, and Flannery submitted eleven pages of excerpts, along with a disc containing the entirety of the text messages, as part of the affidavit supporting his petition for a search warrant. The excerpts include discussions of the Savannah group and their sexual activity with the adopted children; the sender's desire that he and Omstott should join the group; descriptions by the sender of pictures of children engaged in sexual activity; a desire by the sender to produce child pornography with Omstott, perhaps by finding a pre-verbal infant whom Omstott could offer to babysit; and the sender's reporting that he had found and viewed websites which contain child pornography.

On August 25, Kidd spoke with Omstott about where Kinison had viewed the child pornography referred to in the text messages and Omstott reported that he had viewed it on his home computer. Flannery looked up Kinison's address in the Kentucky drivers' licensing records, and verified on the Fayette County Property Valuation Adminstrator's website that Kinison had purchased a home at that address and still lived there. On August 31, Flannery showed Omstott a

photograph of Kinison, and she advised that the person in the photograph was the sender of the text messages.  This is the entirety of the evidence presented in Flannery's affidavit to the Fayette County District Court.  Based on this affidavit, the court found probable cause for a search of Kinison's home and person and issued a warrant incorporating Flannery's affidavit on August 31.

Flannery, in the company of other officers, executed the warrant on September 1, 2011, and seized from Kinison's home computers, various peripherals, and a cellphone. He also searched Kinison's vehicle and retrieved a cellphone.  Kinison now moves to suppress this evidence on Fourth Amendment grounds, asserting that the warrant was issued without probable cause to search his home and vehicle.  Because the warrant was not supported by probable cause, the searches of Kinison's home and vehicle were undertaken in violation of Kinison's Fourth Amendment rights; because this violation occurred as a result of culpable police conduct, the purpose of the exclusionary rule is served by its application in this case, and the court will therefore suppress the evidence.

The warrant at issue was not supported by probable cause, and the issuing magistrate did not have a substantial basis for concluding that probable cause existed, *see United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), because the investigating officer, who was also the affiant, performed no investigation to corroborate his informant's suggestion that the other party to the text messages in the affidavit was actually Kinison.  The investigating officers failed to corroborate, in any way, Omstott's assertion that Kinison was the person

3

sending the text messages, but rather took all of her assertions at face value.  They did not confirm that the telephone number in question was, in fact, Kinison's telephone number.  They accepted Omstott's assertion that Kinison was viewing pornographic images on his computer at home, even though that assertion rested upon her assumption, as the fact that she was receiving text messages indicates that she was not in the presence of the sender.  Furthermore, the officers performed no investigation of Omstott that might have verified her veracity or reliability, or might have detected any other motive behind her contacting police.  Finally, the affidavit fails to allege the existence of any facts that may have existed based upon the training and experience of the affiant that such text messages are indicative of a person having evidence of child pornography in his home.

Mere suspicion is insufficient to support the issuance of a search warrant. *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)  While Omstott is a named informant, and therefore inherently more credible than an unnamed or unidentified informant, *see United States v. Crouch*, 367 F.3d 557, 560-61 (6th Cir. 2004), the affidavit fails to supply any justification, even in a conclusory manner, for the investigators' unquestioning reliance on her statements.  The fact that the investigators verified that her phone contained text messages such as she described cannot support their reliance on her other assertions. Such reliance without verification on a named informant with no other indicia of credibility is insufficient to establish probable cause to investigate Kinison, and it does not suggest a "fair probability that contraband or evidence of a crime" would be found

4

at Kinison's home. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983).   While the nature of the alleged crimes may alleviate some responsibilities from law enforcement regarding the execution of the warrant, *see United States v. Paull,* 551 F.3d 516, 522 (6th Cir. 2009), it cannot serve as cause to relax the requirement that law enforcement officers actually investigate and establish probable cause.

Because police did not confirm the identity of the owner of the phone number, the affidavit also lacks probable cause because it fails to establish a nexus between the alleged evidence and the property to be searched.  *See United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004).  Omstott did not claim to personally observe Kinison viewing pornography on his home computer, and her assertion recorded in the affidavit that he was viewing the pornography at home is mere supposition.   Omstott's assertions that the person she was texting was Kinison, that Omstott's text messages contained conversations as she alleged, and that Flannery looked up Kinison's address are insufficient to create a nexus between the alleged criminal behavior and the place to be searched.  For this additional reason, the issuing magistrate did not have a substantial basis for finding probable cause based on Flannery's affidavit.

The warrant to search Kinison's home and vehicle was issued in the absence of probable cause.  Granting the issuing magistrate the deserved deference, *see United States v. Leon*, 468 U.S. 897, 915 (1984), there was still not a sufficient basis for finding that probable cause existed.  *See Carpenter*, 360 F.3d at 594.

Accordingly, under the totality of these circumstances, *see Leon* at 915, including the nature of the alleged crimes, *see United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006), the search of Kinison's home and vehicle was executed in violation of his rights under the Fourth Amendment.  By itself, however, such a violation does not automatically force the court to apply the exclusionary rule.  "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 131 S.Ct. 2419, 2427 (2011).  The purpose of the exclusionary rule is not to deter the judiciary from issuing warrants in the absence of probable cause, *see id.* at 2428, but to deter police conduct that exhibits "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* at 2427 (internal quotations omitted).  Only such culpable conduct by police, in the absence of good-faith, objectively reasonable reliance by the executing officers, *see Leon* at 909, justifies suppression.

This is such a case due to the reckless, or at least grossly negligent, behavior of the police in failing to corroborate the most basic aspect of Omstott's story—that Kinison was actually the person who sent the text messages.  Though the alleged crimes in this case are heinous and disgusting, no factors exist that would permit the court to excuse such a failure: no immediate risk of danger to any individual existed; nor did the police allege that Kinison had related prior convictions, *see Wagers*, 452 F.3d at 541; nor would the police have faced any difficulty beyond that of issuing a subpoena to Kinison's cellular service provider.

6

Furthermore, the good-faith exception of *Leon* cannot apply in this case. "The *Leon* good-faith exception applies when a warrant issued by a neutral and detached magistrate is discovered, after the search, to have been nonetheless invalid — and hence, the search unlawful — yet the officer conducting the search acted in objectively reasonable reliance on [that] warrant." *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) (internal quotations omitted). In this case, any such objectively reasonable officer, who observed that the affidavit included by reference in the warrant failed to actually connect Kinison reliably to the crimes charged, would have come to the conclusion that the search was invalid. As in *Hodson*, however, such an objective test cannot apply in this specific case because there was no such objective officer, as Flannery was both the affiant and the officer who executed the warrant. *See id.* at 293 Any subjective knowledge Flannery may have had that he did not include in the affidavit is insufficient to show that he acted in objective good faith. *See id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)). In the absence of such good faith, the purpose of the exclusionary rule — to deter culpable police misconduct that violates the Fourth Amendment — is served by applying it in this case. Accordingly,

**IT IS ORDERED** that the motion to suppress (R. 20) is **GRANTED**.

Signed on August 20, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

7