UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:12-CR-57-JBC-REW |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| CHARLES ARTHUR KINISON, JR., | ) | ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court assesses a motion for release made by Defendant, Charles Arthur Kinison, Jr. He faces three charges of knowing receipt of child pornography and one charge of knowing possession of child pornography. DE #1 (Indictment). The Court previously detained Defendant pending trial based on risk of danger. DE #12 (Detention Order). Since then, Chief Judge Coffman granted Defendant's suppression motion, and the Government filed an interlocutory appeal. Kinison now seeks release from custody pending any trial. DE #37 (Motion).

The Court found a proper basis to reopen under §3142(f)(2) and held a hearing on September 7, 2012. Essentially, the suppression ruling, pending appeal, significantly alters the likelihood of conviction, one factor the Court cited in its prior detention ruling. DE #12-1 (Detention Order) at 2. The changed landscape does, in the Court's view, qualify as new and material evidence[1] per the statute. Indeed, the United States conceded that the suppression ruling

---

[1] Because of the prior order, § 3143(c) by its own terms does not apply. Reopening, if supported, is always an option pre-trial under § 3142(f). Suppression may not always require reopening but, here, the Court, in its discretion, assessed the legal ruling as an event that would "increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *United States v. Watson*, 475 Fed. App'x 598, 600 (6th Cir.

1

would, if upheld, gut the current prosecution. The Court determined to hear both sides on the propriety of continuing detention.

Having reviewed the full record, the Court **DENIES** Defendant's motion for release (DE #37). Kinison clearly remains too dangerous for release on conditions while this case pends.

I.  **Relevant History**

On May 10, 2012, a federal grand jury indicted Kinison on three counts of knowing receipt of child pornography and one count of knowing possession of child pornography. DE #1 (Indictment). All of the charged conduct allegedly occurred in Fayette County, on different dates, between March and August 2011. *Id.* The Court conducted Defendant's initial appearance and arraignment on May 31, 2012. DE #6 (Minute Entry). Following a June 5, 2012, detention hearing, the Court remanded Defendant to custody pending trial. DE #12 (Detention Order).

In the prior detention order, the Court found that Kinison rebutted the presumption as to both flight and danger. The Court's rebuttal findings rested generally, and primarily, on Defendant's lengthy community ties, physical disabilities (and resulting limitations), productive work history, and lengthy period of state bond compliance. The Court nevertheless detained Defendant after consideration of the full §3142(g) factors, finding clear evidence of danger that conditions would not adequately mitigate:

> [T]he danger presented is plain and results from Kinison's own activities. Police found extensive child pornography on Kinison's computer. His texts discuss child porn, and Defendant made incriminating post-*Miranda* remarks regarding his role in the texting. Thus, there is strong evidence indicative of child pornography involvement. Paired with this is the texting itself. The

---

2012) (defining standard for reopening). The Court previously based detention, in part, on the correlation of a well-supported federal charge and danger. DE #12-1 (Detention Order) at 2. The Court thus deemed reopening, following suppression, appropriate in this instance.

>United States proffered regarding content[2], and Kinison did not dispute same, relying instead on First Amendment arguments and "fantasy" characterizations. This Court views a stated plan to kidnap a child for sexual abuse purposes, expressed by a person in possession of child pornography, as a sharp and unmistakable alarm. Although Kinison's physical limitations and unremarkable state bond period may suggest lower danger, his conduct and texting behavior establish a highly worrisome potential. Remarkably, he has continued to have computer and internet access during the bond period. He also, per the bond report, has minor children in his life, including his own son and his step-children. In combination with Defendant's obvious financial resources, the Court finds that the danger level presented is too high for conditions to reasonably remedy, particularly given the stress and anxiety that likely would attend a well-supported federal prosecution in this circumstance. A person charged with child victimization that explicitly discusses even more direct exploitation is not a viable release candidate. Further, the Indictment charges receipt over a 6-month span, suggesting a long-term rather than episodic interest.

*Id.* at 3. Kinison did not appeal this decision.

Defendant, by counsel, subsequently moved to supress all evidence seized from Kinison's person, residence, and vehicle, as well as the fruits thereof. DE #20 (Motion). The United States responded in opposition, DE #27, and Kinison filed a supplemental memorandum, DE #29. Chief Judge Coffman conducted an evidentiary hearing and, following post-hearing briefing, ultimately granted Defendant's motion to suppress. DE #35 (Memorandum Opinion and Order).

Judge Coffman found that the state judge did not have probable cause to issue warrants to search Kinison's home and vehicle. *Id.* at 3. Further, Judge Coffman found that the violation occurred "as a result of culpable police conduct." *Id.* Specifically, "the investigating officer, who was also the affiant, performed no investigation to corroborate his informant's suggestion that the other party to the text messages in the affidavit was actually Kinison." *Id.* Investigating

---

[2] The United States proffered, which is appropriate under the Act. The proof thus was indirect, but Kinison did not argue proffer inaccuracy.

3

officers did not: confirm that Kinison was the individual sending the text messages; link the telephone number in question to Kinison; investigate the veracity of the informant's assertion that Kinison viewed child pornography on his computer; or confirm the reliability of the informant. *Id.* at 3-4.  Accordingly, and in addition to an identification deficiency, the affidavit lacked a nexus between the alleged evidence and the property to be searched.  Per Judge Coffman, *Leon* did not save the warrant due to the investigating officer's "reckless, or at least grossly negligent, behavior . . . in failing to corroborate the most basic aspect of [the informant's] story – that Kinison was actually the person who sent the text messages." *Id.* at 6.  Of course, the fact that Kinison admitted authoring and sending the texts in a post-*Miranda* interview was irrelevant to a four corners assessment of the state warrant.

The United States, with proper certification, filed an interlocutory appeal to the Sixth Circuit on August 20, 2012.  DE #36 (Notice of Appeal).  Prompted by Defendant's motion for release, the Court conducted a hearing pursuant to § 3142(f)(2) on September 7, 2012.

At the hearing, Jeff May testified for Defendant, and Lexington Police Detective David Flannery testified for the United States.  May (actually the ex-husband of Kinison's current wife) vouched for Kinison, to a limited degree.  He confirmed seeing no violent conduct by Kinison and said he probably would allow Kinison to see his (May's) children, who also are Kinison's step-children, if supervised.  Det. Flannery testified regarding post-arrest contact between Kinison and his wife, indicating the wife's fears of Kinison, the rocky relationship between the Kinisons, and alleged inculpatory remarks by Kinison.   Both sides further proffered and argued, though each declined a chance at post-hearing briefing.

## II.     Analysis

The Court has two areas of inquiry. First, do changes since the first detention decision lead to a different result? Second, does a due process analysis compel release in this post-suppression, government-appeal context, even if the detention-related facts otherwise do not?

*Detention Analysis Under Reopening Standard*

The Court persists in the view that Kinison clearly is too dangerous to be released on conditions. Some case developments have improved his position. The fact of suppression means the likelihood of conviction obviously is lower; any desperation or ill motive attributable to concern over the specter of conviction drops greatly in light of the suppression ruling. Further, the defense proffered that the United States has not corroborated any actual Georgia pedophiliac commune or a neighbor facilitating Kinison's entry into such a group. The Government did not contest such proffer, leading to an inference that Kinison's texts were part of a kidnap and exploitation *fantasy*, albeit one of disturbing detail and specificity. A confirmed, concrete plan of this nature would, undoubtedly, in this case result in detention and might even be separately criminal.

The defense also proffered state materials that reflect a finding of no evidence that Kinison has actively abused his own child or step-children. The April 2012 documents indicate state approval for Kinison to be the caretaker his own minor (17 year old) son, and to have supervised contact with his younger step-children. (The records do not reflect anything about the scope or intensity of the review, and they do not indicate familiarity with any criminal prosecution.) The April report date shows that the information is not truly new, for detention purposes, but the Court will consider the documents as part of the available information.

5

The danger evidence has sharpened in some important respects relative to the prior hearing. While the United States only proffered before, the actual texts now are in the record. These are texts that Kinison admitted authoring, post-*Miranda*.[3] They include truly chilling remarks regarding planned child sexual exploitation. As part of an explicit, graphic discussion about finding a child to sexually abuse, in preparation for admission to the "fantasy" Georgia commune, excerpted texts attributable to Kinison include:

> Need to find a kid. Not by asking of course but babysitting. Small kid. One that cant talk.
>
> If I could find a nontalking kid to babysit would you **[sexual reference]******.
>
> Im going to sorta look around for someone I might know who has a nontalking kid. I suppose under 2

DE #30-1 (Joint Exhibit A) at 8. The exchange evidently occurred between Kinison and his girlfriend at the time. The import of the texts, within the detailed discussion not here duplicated, is unmistakable. While the Georgia talk may have been fantasy, the texts refer to Kinison's handling of child porn at the precise time charged in the indictment. Thus, in that important and case-related aspect, the texts rest gravely in reality.

The suppression ruling impacts admissible evidence, but it does not alter the landscape of proof in the detention context. The rules of evidence expressly do not apply under § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."); *see also* Fed. R. Evid. 1101(d)(3)

---

[3] Kinison does not contest that he admitted the texts, but denies he admitted possessing child pornography.

(making Rules inapplicable for bail determinations).  This has led courts to consider suppressed but relevant evidence on the question of detention.  *See, e.g., United States v. Pina-Aboite*, 97 Fed. App'x 832, 835-36 (10th Cir. 2004) ("In a detention hearing, the district court is permitted to consider the evidence sought to be suppressed as if it were admissible."); *United States v. McCarty*, No. CR 08-513, 2009 WL 5061577, at *3 (D. Hawaii 2009) (considering suppressed evidence in presumption case because of 3142(f) text and because suppression rulings do not impact probable cause established by indictment).

Further, the Sixth Circuit expressly teaches that the evidentiary assessment under § 3142(g)(2) addresses evidence of **danger** not evidence of guilt.  *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) ("This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt.") (citation omitted).  Suppression impacts the latter, by eliminating valid evidence of guilt, but not the former.  The texts occurred, and the Court cannot ignore those in determining Kinison's threat level.  Section 3142 instructs the deciding court, without the bounds of the rules of evidence, to "take into account the available information concerning" all of the bail factors, including "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  § 3142(g)(4).  Kinison's texts are part of the extant information concerning danger that is properly before the Court.

The Court previously credited Kinison for rebutting the presumption of detention.  As noted in the unappealed ruling, he was under a state bond term for several months without a known violation.  Kinison's criminal record is generally unremarkable.  He has a long history of productivity in society.  The United States did not seek detention based on flight risk.

7

The Court still finds, despite Kinison's positive historical attributes, that the danger he presents clearly is too serious for a conditional release. Again, while he succeeded on state bond, supervisory conditions were virtually non-existent, and Kinison even maintained computer access during the period. The low-intensity nature of state oversight weakens the relevance of the state bond period as proof of release worthiness.

The § 3142(g) factors include significant pro-detention elements. The charges are crimes of violence involving minor victims, *see* 18 U.S.C. § 3156, meaning (g)(1) expressly indicates detention. As discussed, the evidence of danger ((g)(3)) and nature and seriousness of danger ((g)(4)) are compelling. While a *mere fantasy* about finding a non-verbal child to sexually abuse as a gateway into a community of pedophiles may be marginally less dangerous than an *actual conspiracy* to so act, a mindset capable of hatching and verbalizing such a fantasy is acutely perilous. Per the indictment and proffer, Kinison had by that point been handling child porn for about six months, and he discusses child porn discoveries in the texts. Thus, again, text message exchanges blur the boundary between fantasy and reality, since part of the conversation evidently was about real events. Kinison has a plain, prurient interest in children, as references during the reopened hearing further showed. Involvement in child porn is dangerous enough, but taking the substantial step of formulating and discussing plans, even fictional ones, to abuse a non-verbal child is beyond the line of risk the Court can hedge with conditions.

Some (g)(3) factors do weigh in Kinison's favor. The Court has carefully sifted those. None, including Defendant's disability status, sufficiently counterbalances the core problem, which is that Kinison has shown himself capable of apex criminal conduct involving the most vulnerable members of society. The Court finds again that the United States has shown, by clear

8

and convincing evidence, that Kinison must be detained during the pendency of this case; release conditions will not reasonably assure community safety.

*Due Process*

Defendant further contends, in an argument primarily raised orally at the hearing, that detention pending appeal would violate his substantive due process rights under the 5th Amendment. Pretrial detention "violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" *United States v. Watson*, No. 11-2338, 2012 WL 1237785, at * 3 (quoting *Bell v. Wolfish*, 99 S. Ct. 1861, 1872 (1979)). Kinison argues that pre-trial detention during the pendency of the United States's appeal would excessively prolong detention, creating pre-trial punishment contrary to the Constitution.

> In *Watson*, the Sixth Circuit recently adopted the Second Circuit's analytical approach:
>
> The Second Circuit has identified four factors to be considered in determining if the pretrial detention is unconstitutionally excessive: 1) the length of the detention; 2) the extent of the prosecution's responsibility for the delay of the trial; 3) the gravity of the charges; and 4) the strength of the evidence upon which detention was based.

*Id.* The inquiry calls for a case-by-case determination. *Id.*

The appeal likely will take twelve months.[4] Kinison has been in custody since May 31, 2012. Thus, if the Government succeeds, Kinison would remain in custody for a period of 15 months until the case could be tried. That is not a result to be taken lightly, although "the length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." *Id.*; *see also United States v. Aileman*, 165 F.R.D. 571, 582 (1996) (containing an encyclopedic review of due process cases, in the context of pre-trial detention). This period would fall empirically in a

---

[4] The Court's staff informally queried the Sixth Circuit about appeal times for this estimate. That period is consistent with the Court's experience regarding typical appeal duration.

middle band of relative pre-trial periods under due process scrutiny. *See id.* (grouping delay periods). Suffice to say, many cases have approved much longer delay periods as consistent with due process. *See, e.g., Watson*, 2012 WL 1237785, at *3; *United States v. Meeks*, 2011 WL 4407448 (E.D. Mich. 2011) (approving 22 month period and citing Second Circuit law approving 30-33 month period).

The second factor—prosecution responsibility for delay—is particularly interesting in this context. There is no assertion by the defense that the prosecutor improperly introduced delay through litigation tactics, unnecessary motion practice, improper discovery, or other such acts. The decision to appeal itself does not create fault for delay; the Government is within its statutory rights to appeal per § 3731, and it has certified (without impeachment) that the appeal is for a proper purpose. DE #36 (Notice of Appeal); *see Watson*, 2012 WL 1237785, at *4.

Instead, Kinison uses the underlying suppression facts and findings to meet this factor. Thus, the defense cites the law enforcement culpability decried by Judge Coffman as establishing prosecution delay responsibility. Without police misconduct, the argument goes, there would have been no basis to suppress and thus no delay in trial. It is true that the suppression ruling criticizes law enforcement in this case. The warrant handling is at least a cause-in-fact of delay; without the suppression issue, there would have been no ruling and thus no appeal of that ruling, with attendant delay. However, the Court has found no cases (and the defense has cited no cases) that trace pre-charge conduct resulting ultimately in suppression to prosecution delay triggering a due process violation for excessive detention. The analysis instead typically involves decisions or actions within the formal prosecution itself. *See United States v. Milan*, 4 F.3d 1038, 1045 (2d Cir. 1993) (prosecutor's lack of notice to court); *United States v. Gallo*, 653

F. Supp. 320, 343 (E.D.N.Y. 1986) (citing "complexity of government's legal theory and the volume of evidence involved"); *Ailemen*, 165 F.R.D. at 584 (discussing prosecution delay in provision of wiretap transcripts and failure to facilitate discovery review).

Here, there is no suggestion of intentional misconduct by police. While Judge Coffman withheld *Leon*'s safe harbor from the suppression ruling, nothing in the record indicates law enforcement calculated its warrant behavior to produce a longer period of pretrial detention. The question, again, for due process purposes, is the relationship between delay and punishment. Agent negligence in following proper warrant procedure here fits poorly within a due process fault analysis.

The remaining due process factors—charge gravity and evidence warranting detention—weigh strongly against any constitutional violation. In *United States v. Salerno*, the Supreme Court upheld the Bail Reform Act, against a substantive due process challenge, premised on the legitimate regulatory aims of the statute. The Court stated, "There is no doubt that preventing danger to the community is a legitimate regulatory goal." *United States v. Salerno*, 107 S. Ct. 2095, 2101 (1987); *id.* at 2103 (calling "government's interest in preventing crime by arrestees . . . both legitimate and compelling"). Here, the Court has found, under the full Bail Reform Analysis, that the Government has clearly proven the need for detention. In *Salerno*, the Court observed, discussing a defendant against whom the government had proven the requirement of danger-based detention under the BRA:

> While the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest.

11

*Id.* at 2103.

Kinison faces Class C child pornography felony charges with a mandatory minimum 5 year incarceration term. Congress classifies these as crimes of violence involving minor victims. The evidence warranting detention is clear and strong, as earlier catalogued. The contraband alone creates a statutory presumption of detention, which persists as a factor despite any procedural rebuttal. Here, Kinison admitted authoring texts that plainly discussed finding and victimizing a non-verbal child as part of a broader foray into pedophilia. These case elements establish that detention pending appeal is rationally connected to the regulatory interest of community safety and is not excessive in relation to that legitimate purpose. *Id.* at 2101. As *Salerno* further noted:

> When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.

*Id.* at 2103.

Detention here is protective of society, not punitive toward Kinision. The Court finds no due process violation in the current posture.

Finally, the Court makes three observations about subsidiary issues. First, Kinison's speedy trial assertions relative to the length of pretrial detention fall, at least as phrased, under the Speedy Trial Act alone. That Act expressly excludes time pending the interlocutory appeal by the United States. *See* 18 U.S.C. § 3161(h)(1)(c). Thus, no issue exists under that statute at this time.

Second, the Court emphasizes to the United States its obligation to provide Kinison appropriate medical care during this appeal period. He plainly has physical needs outside those

of the normal detainee population. The Marshal must see that Kinison, following proper evaluation, receives all medically necessary physical therapy and other disability-related medical care. Detention shall not prevent Defendant from receiving medical therapy deemed appropriate and necessary by qualified medical personnel.

Third, the Court reminds counsel of the available expedited appeal mechanism in the Sixth Circuit. While Kinison may well appeal this decision to the District Judge and beyond, the Sixth Circuit does provide a means for seeking advancement of the suppression ruling on the appellate docket. *See* 6 Cir. R. 27(f) (providing good cause requirement for "a motion to expedite").

The Court thus **DENIES** Defendant's motion for release (DE #37). The Court's detention order and detention instructions, as here augmented, remain in effect pending further Court order. Defendant may appeal this decision under 18 U.S.C. 3145.

This the 24th day of September, 2012.

Signed By:
Robert E. Wier /s/ REW
United States Magistrate Judge